UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 2:11-00511-CWH |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| JIAN-YUN DONG, a/k/a John Dong, | ) | |
| GENPHAR, INC., and VAXIMA, INC. | ) | |
| | ) | |

This matter is before the Court on the United States of America's motion, pursuant to 21 U.S.C. § 853(e)(1)(A), as incorporated by 28 U.S.C. § 2461(c), for the entry of a restraining order and the appointment of a federal receiver to preserve the availability of the defendants' assets subject to forfeiture, up to the amount of $3,622,849.14.

## I. BACKGROUND

### A. Facts

The defendant GenPhar, Inc. ("GenPhar") is engaged in the business of conducting scientific research in order to develop vaccines for certain diseases. Its research is supported by multiple federal grants from various federal agencies. The defendant John Dong ("Dong") was the President and Chief Executive Officer, as well as a major shareholder and member of the Board of Directors of GenPhar as of August 2004. In addition, Dong is the sole owner of the defendant Vaxima, Inc. ("Vaxima").

The government alleges that from August 2004 through April 2011, the defendants submitted grant applications, grant progress submissions, and cash transaction reports containing false representations with the intention of obtaining federal grant monies. After the defendants received federal grants for specific purposes, subsequent grant progress reports were submitted to the United States which falsely certified that grant monies were being used and were going to



be used for specific allowable purposes. Allegedly, however, the defendants used these federal grant monies to pay for construction costs of the GenPhar building, even though the terms of the grants did not allow expenditures of this kind. In addition, the grant monies were used by the defendants to pay for lobbying expenses as well as for travel and personal expenses. Further, the defendants directed employees to make materially false representations on their timesheets to support requests for federal grant monies.

### B. Procedural History

The investigation that led to the defendants' indictment was initiated by the filing of two sealed *qui tam* Complaints. Generally, these two Complaints alleged the misuse of federal grant funds by the defendants and by Danher Wang, Dong's wife.

On October 18, 2012, a federal grand jury returned a Second Superseding Indictment against the defendants for conspiracy to submit grant requests containing false representations for the purpose of obtaining federal grant monies, in violation of 18 U.S.C. § 371. Also, in furtherance of the conspiracy to defraud, the defendants were charged with violations of 18 U.S.C. § 641 (theft of government property), 18 U.S.C. § 666(a)(1)(A) (theft from organization receiving federal funds), and 18 U.S.C. § 1343 (wire fraud). The Second Superseding Indictment also notified the defendants that all property constituting or derived from proceeds that the defendants obtained directly or indirectly as a result of these violations and/or used to facilitate such offenses, up to a minimum aggregate amount of $3,622,849.14 in United States currency, was subject to forfeiture upon conviction of the defendants, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1), and 28 U.S.C. § 2461(c). The Second Superseding Indictment also stated that the government would seek the criminal forfeiture of equivalent substitute assets



pursuant to 21 U.S.C. § 853(p) in the event that the property subject to forfeiture cannot be located because of any act or omission of the defendants.

On September 21, 2011, the United States filed a criminal lis pendens on the real property located at S. Morgan Point Road, Mount Pleasant, South Carolina 29466, which is the location of GenPhar's new facility building.[1] On November 15, 2011, the government filed a Bill of Particulars with the Court which identified additional property as being subject to forfeiture to the United States. On February 6, 2012 and February 7, 2012, the government filed Second and Third Bills of Particulars for the forfeiture of property. (ECF Nos. 99 and 101). The government's Third Bill of Particulars included all assets previously listed in the Second Bill of Particulars plus two additional bank accounts.

In addition, on November 15, 2011, the government filed a motion for restraining order. (ECF No. 64). On February 6, 2012, the government filed an amended motion seeking a restraining order and a motion for appointment of a federal receiver to preserve the defendants' assets up to the amount of $3,622,849.14. (ECF No. 100). On March 5, 2012, Dong responded to the government's motion for restraining order.[2] GenPhar, although represented by counsel, did not file a response to the government's motion or the renewed motion for a restraining order. Vaxima, which never appeared through counsel, also did not file a response to the motions.

## DISCUSSION

In this case, the government seeks a restraining order to secure direct assets, which are assets directly traceable to the offenses set forth in the indictment, as well as certain other assets

---

[1] S. Morgan Point Road, Mt. Pleasant, South Carolina is also known as 1200 Innovation Way, Mt. Pleasant, South Carolina 29466. Hereinafter the property will be referred to as S. Morgan Point Road.

[2] Dong responded to the motion for restraining order, not the amended motion. (ECF No. 123). Both motions are identical, except the amended motion includes additional assets.



that will be subject to forfeiture as substitute assets if any of the defendants is convicted and the criteria for forfeiting substitute assets in 21 U.S.C. § 853(p) are satisfied.

Pursuant to 18 U.S.C. § 982, proceeds derived from the offenses alleged in the indictment are forfeitable. "The term 'proceeds' includes any property obtained or retained as a consequence of the offense." United States v. Park, 825 F. Supp. 2d 644, 647-48 (D. Md. 2011). In the case of a business that is solvent only because of "the infusion of illegally-obtained funds, the entire business may be subject to forfeiture as the proceeds of the offense." Id. at 648 (citing United States v. Warshak, 631 F.3d 266, 329-30 (6th Cir. 2010) ("all proceeds of defendant's business are forfeitable because the business was 'permeated with fraud;' but even if a part of the business was legitimate, the proceeds of that part are . . . forfeitable if the legitimate side of the business would not exist but for the 'fraudulent beginnings' of the entire operation."). Therefore, the proceeds of the offenses charged in the Second Superseding Indictment, as well as any property used or intended to be used to facilitate the commission of the offenses charged are subject to criminal forfeiture.

Once a defendant has been indicted or information has been filed charging a defendant with a violation for which criminal forfeiture is appropriate, "the court may enter a restraining order . . . to preserve the availability of property . . . ." 21 U.S.C. § 853(e)(1)(A). The "sole purpose" of the statute's restraining order is to "preserve the status quo . . . pending disposition of the criminal case." United States v. Monsanto, 491 U.S. 600, 613 (1989) (quoting S. Rep. No. 98-225, at 204 (1983); Pub. L. No. 98-473, 1984 U.S.C.C.A.N. (98 Stat. 1837) 3182, 3387)). While the law deems a defendant innocent until proven guilty, the United States Supreme Court has approved pre-trial restraint of assets. See Monsanto, 491 U.S. at 615 (stating that the government may restrain the defendant's property, such as a home and an apartment, when



probable cause exists that the property will ultimately be proven forfeitable). To restrain assets, however, the government must have probable cause that the seized property will ultimately be proven forfeitable. United States v. Bollin, 264 F.3d 391, 421 (4th Cir. 2001); In re Billman, 915 F.2d 916, 919 (4th Cir. 1990) (quoting Monsanto, 491 U.S. at 615). "The probable cause found by the grand jury satisfies the government's burden of proving the allegations of the indictment." In re Billman, 915 F.2d at 919.

"Once the Government has made the required probable cause showing, the entry of a pre-trial restraining order is mandatory with respect to both the directly forfeitable property and any substitute assets." Park, 825 F. Supp. 2d at 647. Direct assets are described in 21 U.S.C. § 853(a) as:

> any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation . . . [and] any of the person's property used, or intended to be used, in any manner . . . , to commit, or to facilitate the commission of, such violation . . . .

21 U.S.C. § 853(a)(1) & (2). In addition to the preservation of direct assets, "[i]f proceeds or property subject to forfeiture are unavailable, the court must order the forfeiture of substitute assets up to the value of the unavailable assets." United States v. Lam, No. 3:07-cr-374, 2011 WL 1167208, at *2 (E.D. Va. 2011) (citing 21 U.S.C. § 853(p)). Forfeiture of substitute assets is codified in 21 U.S.C. § 853(p):

> [I]f any property described in [21 U.S.C. 853(a)], as a result of any act or omission of the defendant—
>
> (A) cannot be located upon the exercise of due diligence;
> (B) has been transferred or sold to, or deposited with, a third party;
> (C) has been placed beyond the jurisdiction of the court;
> (D) has been substantially diminished in value; or
> (E) has been commingled with other property which cannot be divided without difficulty . . . [,]



> the court shall order the forfeiture of any other property of the defendant, up to the value of any property described in subparagraphs (A) through (E) . . . .

In the present case, the government seeks a restraining order to secure the defendants' direct and substitute assets up to the value of the proceeds the defendants obtained during the course of the illegal activity. The defendants allegedly used grant money to pay for the construction of the GenPhar building located at S. Morgan Point Road, Mount Pleasant, South Carolina 29466. This building is considered a direct asset in this case pursuant to 21 U.S.C. 853(a). According to a property inspection and appraisal conducted on August 27, 2012, the market value of the building is $1,560,000.00. (ECF No. 217). The prospective market value at completion is $4,260,000.00. However, to date, construction has ceased and several outstanding mechanics liens, estimated at $2,954,627.00, have been placed on the property. In addition, this property is subject to a foreclosure action in Charleston County.

Dong argues that the true net equitable value of this property is exceeded by three times the total amount of $3.6 million. (ECF No. 123). He believes that the appraised value is flawed due to the appraiser's failure to conduct an interior examination of the property. Further, he argues that even though the building is incomplete, its true value may be realized upon final construction and improvements.

The appraiser suggested that before the defendants' estimated value can be realized, the building will have to be brought up to code, GenPhar's interior upfit will more than likely need to be stripped, and the building will need to be leased as a multi-tenant office building. Further, an interior evaluation revealed approximately $500,000.00 in damages due to theft of copper from the building. Thus, the Court disagrees with Dong that the net equitable value of the property subject to the government's interest of $3,622,849.14 could be satisfied by this property



alone. Therefore, according to 21 U.S.C. § 853(p), substitute assets may be restrained in order to secure $3,622,849.14 that cannot be secured by direct assets.

The Fourth Circuit has found "substitute property is subject to pretrial restraint under [21 U.S.C. 853(p)]." United States v. Bromwell, 222 F. App'x 307, 312 (4th Cir. 2007). In fact, "[s]ection 853(p) is not discretionary; rather, the statute mandates forfeiture of substitute assets 'when the tainted property has been placed beyond the reach of a forfeiture.'" United States v. Alamoudi, 452 F.3d 310, 314 (4th Cir. 2006). "[T]here is no discretion to permit a defendant to spend [substitute] assets that are subject to forfeiture." United States v. Wingerter, 369 F. Supp. 2d 799, 811 (E.D. Va. 2005) (stating that the court does not have judicial discretion to modify a restraining order even if the defendant argues that his desire to spend funds is to pay monthly living expenses). Therefore, substitute assets must be preserved. Id. The United States Supreme Court has acknowledged that § 853 "may lead to results that 'may seem harsh.'" Id. (quoting Monsanto, 491 U.S. at 613). "Yet, as the Supreme Court also recognized, this is precisely what the statute requires and it is the province of Congress, not the courts, to amend the statute if the results ultimately seem undesirable." Id. at 811. "Courts interpret [§ 853(p)] liberally so as to 'thwart efforts by a defendant to circumvent the economic impact of an anticipated criminal forfeiture sentence.'" Alamoudi, 452 F.3d at 316 (quoting United States v. McHan, 345 F.3d 262, 272 (4th Cir. 2003).

In the case at hand, the GenPhar building, which is currently appraised at $1,560,000.00, does not satisfy the amount the defendants' allegedly owe the government. 21 U.S.C. § 853(p)(1)(D) is applicable to this case because the property has "substantially diminished in value." Therefore, in order to secure the amount the defendants allegedly owe, the government must restrain the defendants' substitute assets.

Dong contends that due process entitles him to notice and a hearing before he is deprived of his property in a forfeiture action. However, the Fourth Circuit has held that a pretrial adversary hearing is required only "when a defendant claims that a portion of the assets restrained pursuant to criminal forfeiture statutes are untainted and that he has no other funds from which to secure the counsel of his choice." United States v. Farmer, 274 F.3d 800, 803 (4th Cir. 2001). In the present case, none of the defendants have argued that they need funds to pay for their defense. Dong simply contests forfeiture because he believes the S. Morgan Point Road, Mt. Pleasant, South Carolina property solely satisfies the government's alleged interest of $3,622,849.14.

Therefore, this Court grants the government a restraining order that immediately restrains, prohibits, and enjoins the defendants and their agents, servants, employees, attorneys, family members, and those persons in active concert or participation with them, as well as those persons, financial institutions, or entities who have any interest or control over any assets which constitute or are derived from proceeds traceable to the offenses or any assets deemed substitute assets pursuant to 21 U.S.C. § 853(p) from attempting or completing any action that would affect the availability, marketability, or value of such assets, including but not limited to selling, assigning, pledging, distributing, encumbering, wasting, secreting or otherwise disposing of, or removing from the jurisdiction of this Court, all or any part of their interests, direct or indirect in the subject property. The Court finds that the real and personal property[3] referenced below shall be restrained up to and not to exceed Three Million Six Hundred and Twenty-Two Thousand Eight Hundred Forty-Nine Dollars and Fourteen Cents ($3,622,849.14). The following asset list

---

[3] In the September 25, 2012 pretrial hearing, the government stated that a lis pendens has been recorded against the following properties: S. Morgan Point Road, Mt. Pleasant, South Carolina, 4201 Victory Pointe Lane, Mt. Pleasant, South Carolina, and 441 Lake Moultrie Drive, Bonneau, South Carolina. In addition, on October 30, 2012, the government stated that a lis pendens has been recorded against the forty acres located in St. Clair County, Alabama.



was provided by Assistant United States Attorney Mark Moore on October 24, 2012 pursuant to this Court's request. The assets subject to the forfeiture are those that are listed in the Second Superseding Indictment (ECF No. 242) and the Third Bill of Particulars (ECF No. 101) and consist of the following:

1. Cash Proceeds / Personal Money Judgment: A sum of money equal to all proceeds the defendants obtained directly or indirectly as the result of the offenses charged in the Second Superseding Indictment, or traceable to such property, that is a minimum of $3,622,849.14 in United States currency, for which the defendants are jointly and severally liable.

2. S. Morgan Point Road, Mount Pleasant, SC 29466
   Sub-Division: Christ Church Parish

   All that certain piece, parcel or tract of land with any and all improvements thereon, situate, lying and being in Christ Church Parish, Town of Mount Pleasant, Charleston County, South Carolina and containing 2.595 Acres, and designated as Parcel B, and shown on that certain Plat prepared by Atlantic Coast Land Surveying entitled "Subdivision, Recommendation and Property Line Adjustment Plat Showing A New 6.000 Acre "Parcel A" Prepared for University Medical Associates of the Medical University of South Carolina and Oakland Properties, LLC, Created from a 0.128 Acre Parcel With TMS #600-00-00-056, A 0.260 Acre Portion of a Parcel With TMS#600-00-00-055, A 0.749 Acre Portion of a Parcel with TMS #600-00-00-057 and A 4.863 Acre Portion of a Parcel with TMS # 600-00-00-047 and a New 2.595 Acre "Parcel B" Created From the Remaining Parcel With TMS # 600-00-00-057 and A 0.804 Acre Portion of a Parcel with TMS # 600-00-00-047" dated April 29, 2008, last revised June 17, 2008, and recorded in Plat Book L08 at Page 0162 in the RMC Office for Charleston County, South Carolina. BUTTING, BOUNDING, MEASURING AND CONTAINING as by reference to said plat will more fully appear. Being the same property conveyed to the Mortgagor herein by deed of Oakland Properties, LLC., dated March 28, 2007 and recorded in Book S627, page 692 in the RMC Office for Charleston County.
   TMS #600-00-00-056



3. Oppenheimer Funds (OIBBX)
   RPSS Tr Simple IRA
   Acct: xxxxx xxxxxx8137
   Registered to: Genphar Inc FBO Jiayun Dong

4. Oppenheimer Funds (OIBBX)
   Simple IRA
       Strategic Income Fund B
       Acct: xxxxxxxxxxx6593
       Small & Midcap Value Fund B
       Acct: xxxxxxxxxxx0791
       Global Fund B
       Acct: xxxxxxxxxxx6592
       Main Street Fund B
       Acct: xxxxxxxxxxx0275
   Registered to: FBO Danher Wang

5. Oppenheimer Funds (OIBBX)
   Rollover IRA
       Strategic Income Fund B
       Acct: xxxxxxxxxxx8351
       Small & Midcap Value Fund B
       Acct: xxxxxxxxxxx9919
       Global Fund B
       Acct: xxxxxxxxxxx1538
       Main Street Fund B
       Acct: xxxxxxxxxxx7103
   Registered to: FBO Danher Wang

6. Nationwide Retirement Plans
   Optional Retirement Programs for EES 030-00261
   Collegiate Capital Management
   Plan # 030-00261
   Acct: xxx-xx-0403
   Registered to: Jian-Yun Dong

7. South Carolina Deferred Compensation Program
   State of SC Salary Deferral 401 (k) Plan & Trust
   Plan: 98965-01
   Acct: xxx-xx-0403
   Registered to: Jianyun Dong

8. TIAA-CREF
   Medical University of SC Optional Retirement Program
   Registered to: Jianyun Dong
   Acct #s: TIAA F001525-2; TIAA 3506411-2; CREF H001525-8

9. Tidelands Bank
   Mt. Pleasant, SC 29465
   Savings Acct: xxxxx0335
   Registered to: Danher Wang & Jian Yun Dong

10. Tidelands Bank
    Joint Checking Account
    Acct: DDAxxxx01779
    Registered to: Danher Wang, John Dong

11. Tidelands Bank
    Acct: DDAxxxxx03882
    Registered to: John Dong

12. Tidelands Bank
    Acct: xxxxx081-1
    Registered to: GenPhar, Inc.
    Account Balance: $59,273 as of February 3, 2012

13. Carolina First Bank
    Acct: xxxxxx1851
    Registered to: Vaxima, Inc.
    Account Balance: $3974.06 as of February 1, 2012

14. Carolina First Bank
    Acct: xxxxxx1752
    Registered to: Coconut Properties, LLC
    Account Balance: $3278.01 as of February 1, 2012

15. Bank of America
    Account #: xxxx xxxx 3596
    Registered to: JianYun Dong
    Account Balance: $21,322.54 as of January 26, 2012

16. Bank of America
    Account #: xxxx xxxx 7445
    Registered to: JianYun Dong
    Account Balance: $25.00 as of January 26, 2012

Substitute Assets:

17. 4201 Victory Pointe Lane, Mount Pleasant, SC 29466
    Lot 4201, Tract 12

    All that piece, parcel or lot of land, lying and being in the Town of



Mt. Pleasant, Charleston County, South Carolina, together with any improvements thereon, and being shown and designated as Lot 4201, 16,434 sq. ft. Victory Pointe Drive on a plat prepared by SouthStar Surveying entitled, "A FINAL SUBDIVISION PLAT OF 'THE BLUFF' AT CHARLESTON NATIONAL TRACT 12 CHARLESTON NATIONAL COUNTRY CLUB TOWN OF MOUNT PLEASANT, CHARLESTON, SOUTH CAROLINA" dated November 15, 1995, revised July 16, 1996, recorded in Plat Book EB at Page 379 in the R.M.C. Office for Charleston County, South Carolina.

Said lot having such size, shape and dimensions, buttings and boundings as will by reference to the said plat more fully appear.

Said property is conveyed subject to the following:

1. Easement to Southern Bell Telephone & Telegraph Company, dated March 22, 1984, recorded October 22, 1985 in Book B-149 at page 340 in the RMC Office for Charleston County, South Carolina.

2. Easement to South Carolina Power Company dated March 4, 1937, recorded in Book V-39, page 57 in the RMC Office for Charleston County, South Carolina.

3. Easement to South Carolina Power Company dated August 20, 1937, recorded in Book F-37, page 726 in the RMC Office for Charleston County, South Carolina.

4. Easement dated November 3, 1989 from Charleston National Country Club, a SC Partnership to South Carolina Electric and Gas Company in Book X-189 at page 404 in the RMC Office for Charleston County, South Carolina.

5. Agreement between Bulls Bay Rural Community Water District, Oyster Bay Utilities, Inc. and Lifetime Homes of South Carolina, Inc. dated July 31, 1986 and recorded April 21, 1987 in Book F-164 at page 637 in the RMC Office for Charleston County, South Carolina.

6. Subject to the authority of the S.C. Coastal Council in "Critical Areas" as defined in Code of Law of South Carolina, 1976, as amended, Section 48-39-10, et. seq. and rules and regulations promulgated to said Act.

7. Jurisdiction of the U.S. Corps of Engineers with respect to any portion of the property which may constitute wetlands or marshlands or navigable waters.

8. Declarations of Covenants, Conditions, and Restrictions for Charleston National Set forth by East Cooper Golf Co, Inc. Applying to Tracts D & E and Lots 33-39 dated November 13, 1992 and recorded November 23, 1992 in Book R-220 at page 629 in the RMC Office of Charleston County, South Carolina as made applicable to this lot by

agreement entitled "Subjection of Lots to Declaration of Covenants, Conditions and Restrictions of Charleston National Properties, LLC." dated September 29, 1995 in Book L 260 at page 581 in the RMC Office for Charleston County, South Carolina.
9. By-Laws Charleston National dated January 14,1993 and recorded on January 21, 1993 in Book W-222 at page 34 in the RMC Office of Charleston County, South Carolina as made applicable to this lot by agreement entitled "Subjection of Lots to Declaration of Covenants, Conditions and Restrictions of Charleston National Properties, LLC." dated September 29, 1995, recorded September 29,1995 in Book L 260 at page 581 in the RMC Office for Charleston County, South Carolina.
10. Declarations of Covenants, Conditions, and Restrictions Victory Point, Waterfront Lots, dated October 3, 1995, recorded October 11, 1995, in Book X 260 at page 349 in the RMC Office for Charleston County, South Carolina.
11. Declarations of Covenants, Conditions, and Restrictions Victory Point dated September 29, 1995, recorded September 29, 1995 in Book L 260 at page 544 in the RMC Office for Charleston County, South Carolina.
Being the same property conveyed to the Grantor herein by Deed of Theodore M. Solso and Denise L. Solso on August 21, 2000 and recorded in the RMC Office for Charleston County, South Carolina at Book M353 page 543 on August 22, 2000.
Lot: 4201, Tax Parcel Number: 599-08-00-017

18. 441 Lake Moultrie Drive, Bonneau, SC 29431
Berkeley County, SC

All that certain lot, piece or parcel of land, known and designated as Lot 2, Section IV, on a plat of Lake Moultrie Shores Subdivision, dated March 23, 1965, recorded in Plat Book 0, at page 176, Clerk of Courts Office for Berkeley County *(a/k/a* ROD Office for Berkeley County; said lot having such buttings and boundings, measurements and dimensions as are shown on said plat.
AND also the assumption of that lease from South Carolina Public Service Authority, dated April 20, 1979
Subject to those Restrictions outlined in the Deed from Lake Moultrie Shores, Inc. To Edwards A. Riley and Katherine Riley recorded in Book A295, at page 175,k and those Restrictive Covenants recorded in Book C113, at Page 108; Book C114, at Page 54; and Book C115, at Page 137.



      Being same property conveyed to the Grantors herein by deed of Edwards A. Riley, Jr. dated July 5, 2002 and recorded in Book 2819 Page 84 in the RMC Office for Berkeley County
Tax Map Number: 057-01-04-004

19. 40 acres located in St. Clair, Alabama
Titled in the name of Deanne Y. Dong
TMS: 24-04-18-0-001-001.001, 24-04-19-0-006-004.000

In order to preserve the defendants' assets, each financial institution is required to inform the government of the account balance at the time of notice and thereafter supply such information by reporting to the government the status of said accounts in the same manner that such information is now furnished to the defendants. Further, it is incumbent on any financial institution, individual, or other entity having a security interest in any real or personal property subject to the restraining order to respond promptly to government requests for information regarding the status of the debt secured by property of the defendants.

The Court further orders that the defendants repatriate any and all properties subject to the restraining order that are located outside of the United States over which the defendants have any direct or indirect interest or control. This includes, but is not limited to, all such assets that are directly owned by the defendants, as well as all such assets that are indirectly owned by or credited to their benefit through their agents, nominees, or business entities controlled by them. In accordance with 21 U.S.C. § 853(e)(4), said properties are to be deposited pending trial in the registry of this Court or with the appropriate law enforcement custodian, in an interest-bearing account, if appropriate.

The Court also orders that all real property, in which the defendants may have an interest, be restrained or otherwise encumbered. This includes the real properties and improvements located at S. Morgan Point Road, Mount Pleasant, South Carolina, 4201 Victory Pointe Lane, Mount Pleasant, South Carolina, 441 Lake Moultrie Drive, Bonneau, South Carolina, and the



forty acres located in St. Clair County, Alabama.[4] The property owner(s) are required to maintain the present condition of any real property subject to this Order, and make timely payment of all mortgage, insurance, utilities, taxes, and assessment costs until further order of this Court. The government shall be allowed to enter said real properties to inspect and videotape conditions so as to verify that said properties are being maintained throughout the pendency of these proceedings.

Finally, pursuant to 21 U.S.C. § 853(e)(1), the Court shall appoint a federal receiver to be named later to manage GenPhar and to act in the corporation's best interest in order to preserve the availability of property pending the outcome of this criminal indictment.

## CONCLUSION

For the foregoing reasons, the government's amended motion for a restraining order and motion for appointment of a federal receiver is granted. (ECF No. 100). All of the direct and substitute assets listed in this Order, up to and not to exceed Three Million Six Hundred and Twenty-Two Thousand Eight Hundred Forty-Nine Dollars and Fourteen Cents ($3,622,849.14), shall be restrained in order to preserve the availability of the defendants' assets subject to forfeiture.

**AND IT IS SO ORDERED.**

_____
C. WESTON HOUCK
UNITED STATES DISTRICT JUDGE

November 28, 2012
Charleston, South Carolina

---

[4] See supra note 3.

