IN THE DISTRICT COURT OF THE UNITED STATES
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 2:11-CR-511 |
| | ) | |
| v. | ) | |
| | ) | |
| JIAN-YUN DONG | ) | |
|    a/k/a John Dong | ) | |
| GENPHAR INC. | ) | |
| VAXIMA INC. | | |

### GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS FOR PROSECUTORIAL MISCONDUCT

On October 2, 2014, the defendants filed their third motion to dismiss in which they accuse and Assistant United States Attorney of committing misconduct before the grand jury. Motion to Dismiss [446]. Their first such motion, filed on July 17, 2013 [299], was rejected by this Court on October 7, 2013 [357]. Their second, and redundant, motion was filed on July 8, 2014 [432]. As easy as it seems to be for the defendants to make such serious accusations, no explanation is provided for why it took so long for them to spot the alleged misconduct that serves as the basis for this motion.

The motion has no merit. The defendants complain that the prosecutor asked leading questions before the grand jury but there is nothing improper about that. Moreover, in more than 500 pages of grand jury transcripts produced more than a year ago, the defendants cite six different instances in which the prosecutor put leading questions to the witness. In their motion, the defendants quote the questions, of course, but do not include all of the witnesses' answers, all of which were affirmative. It must be remembered that the testifying agents were not

1

unsophisticated lay witnesses susceptible to having words put in their mouths by a skilled examiner. Both were experienced agents who had spent years interviewing numerous witnesses and pouring through countless records. They knew how to disagree or clarify if the prosecutors' leading questions were wrong.

For example, at page 2 and 3 of their motion, the defendants quote the prosecutor's question, but not the agents' complete answer. The entire exchange reads as follows:

> Q: So the bottom line is the – the allegations have been there all along was that the wave bioreactor was never purchased. That is still correct.
>
> A: That is correct.
>
> Q: All right.
>
> A: But it's maybe a small -- smaller amount of money related to that and they could have purchased some other pieces of -- of machinery. The way I initially -- it was initially explained to me was that a wave -- wave bioreactor and -- and all these things kind of connect together to – to -- to contain the experiments that they were conducting, so we, just to be absolutely clear on this, we wanted to make sure that this language in this [the indictment] made it clear to you that the wave bioreactor was not purchased, but we're not sure about some of the other equipment."

Grand Jury 573-574. The subsequent quotation in defendants' motion, at page 3, is similarly misleading. A lengthy explanation by the special agent ended with him stating that progress reports filed with the National Institutes of Health were "inconsistent" with what witnesses had stated during interviews. Grand Jury 578. The prosecutor then asked:

> Q: And when you say inconsistent, what you're basically alleging here is that there was not only fraud in the application process, but there was fraud in the reporting process of the hours worked, is that correct?
>
> A: Yes, that's correct. The – the – not just the budgeted hours worked, as in paragraph (f), but the actual hours reported to have worked that -- the prior year. That's what we're trying to relay in paragraph (d) -- in paragraph (g), I'm sorry.

2

Grand Jury 578-579.   These examples show that government personnel presenting the case to the grand jury took pains to clarify and explain their answers rather simply reaffirm the leading questions of the prosecutor.

## Standards for Review of Grand Jury Proceedings

It is well established that an indictment may not be challenged "on the ground that [it is] supported by inadequate or incompetent evidence" before the grand jury, *Costello v. United States*, 350 U.S. 359, 363-64 (1956), or because the "evidence itself is unreliable," *Bank of Nova Scotia v. United States*, 487 U.S. 250, 261 (1988). Confronted with this legal obstacle, the defendants instead challenge the indictment on the grounds of prosecutorial misconduct.

> It would make little sense, we think, to abstain from reviewing the evidentiary support for the grand jury's judgment while scrutinizing the sufficiency of the prosecutor's presentation. A complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation was "incomplete" or "misleading." Our words in *Costello* bear repeating: Review of facially valid indictments on such grounds would run counter to the whole history of the grand jury institution, and neither justice nor the concept of a fair trial requires it.

*United States v. Williams*, 504 U.S. 36, 54-55 (1992) (citations and quotations omitted).

In order to advance a grand jury misconduct claim, a defendant must overcome the presumption of regularity which attaches as a matter of law to grand jury proceedings.  *See e.g., United States v. R Enterprises, Inc.,* 498 U.S. 292, 301 (1991); *United States v. Neha*, 376 F.Supp.2d 1222, 1224 (D.N.M. 2005); *United States v. Loc Tien Nguyen*, 314 F.Supp.2d. 612, 616 (E.D.Va. 2004).   To overcome this presumption, courts have set a demanding legal threshold, holding that a person alleging grand jury misconduct can typically only obtain relief by demonstrating misconduct of a grave nature that substantially influenced in an improper way the grand jury's decision to indict.  *In re United States*, 441 F.3d 44, 60 (1st Cir. 2006).   Thus, the

3

mere presence of irregularities or misconduct before the grand jury is not sufficient to warrant relief. *United States v. Chapman*, 209 Fed. Appx. 253, 274 (4th Cir. 2006).   Rather, to successfully challenge an indictment on grounds of grand jury misconduct, a defendant must also show that the misconduct was of such a profound nature that it caused "the grand jury to no longer be a grand jury." *United States v. Reyes-Echevarria*, 345 F.3d 1, 4 (1st Cir. 2003).   In short, the defendants must show misconduct which substantially influenced the decision to indict or cast grave doubt over whether the decision to indict was free from some substantial, and improper, influence.   *United States v. Derrick*, 163 F.3d 799, 808 (4th Cir. 1998) (quotations omitted).

**There Is Nothing Improper about Using Leading Questions in the Grand Jury, nor Did the Prosecutors Do So Excessively.**

Leading questions before the grand jury are not grounds for dismissal of an indictment. *See United States v. Brown*, 872 F.2d 385, 388 (11th Cir.1989) ("However questionable the practice may have been in presenting the case to the grand jury, it must be remembered that a duly-sworn witness actually testified to the factual correctness of all the questions asked him by the prosecutor"); *United States v. Bednar*, 728 F.2d 1043, 1049 (8th Cir. 1984) (use of leading questions by prosecutor to elicit summary testimony of agent not improper); *United States v. Giorgio*, 840 F.2d 1022, 1032 (1st Cir. 1988) (use of leading questions to summarize, followed by request to witness to explain not improper); *United States v. Gallindo*, 2008 WL 918405, *5 (D. Haw. 2008) ("use of leading questions cannot be construed as excessive when many of the AUSA's questions were not in any way leading"). The Federal Rules of Evidence simply do not apply to grand jury proceedings.   Fed.R.Evid. 1101(d)(2).   As well established as this principle

is, the defendants failed to cite any law, pro or con, that addresses the use of leading questions in the grand jury.

A review of the transcript will reveal that the questioning prosecutors frequently asked leading questions to establish background and set the stage for the agents' narrative explanation, or to summarize the agents' testimony. There is nothing to suggest that the grand jury ceased to act as a grand jury.

## CONCLUSION

The defendants' accusations of misconduct are supported by neither facts nor law. The government respectfully suggests the motion be denied.

                Respectfully submitted,

                WILLIAM N. NETTLES
                UNITED STATES ATTORNEY

                By: s/*Eric J. Klumb*
                    Eric J. Klumb (#01671)
                    Assistant United States Attorney

Charleston, South Carolina
October 14, 2014