1              IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF SOUTH CAROLINA
2                     CHARLESTON DIVISION

3

UNITED STATES OF AMERICA        :
4                                       :
        vs.                     :
5                                       :
JOHN DONG, ET AL.               :       2:11 CR 511
6

7

8

        Bar Meeting and motions hearing in the above matter
9
held Wednesday, January 8, 2014, commencing at 10:50 a.m.,
10
before the Honorable C. Weston Houck, in Courtroom IV,
11
United States Courthouse, 85 Broad Street, Charleston,
12
South Carolina, 29401.
13

14

15

APPEARANCES:
16                      ERIC J. KLUMB, ESQ. and
                    NATHAN S. WILLIAMS, ESQ., Office of the
17                      U.S. Attorney, Charleston, SC, appeared for
                    the Government.
18
                    ROSE MARY PARHAM, ESQ., P.O. Box 1514,
19                      Florence, SC, appeared for Dong.

20

21

22

                RECORDED BY CHONDRA WHITE, ESR
23          TRANSCRIBED BY DEBRA LEE POTOCKI, RMR, RDR, CRR
                        P.O. Box 835
24                     Charleston, SC  29402
                        843/723-2208
25

1          THE COURT:  Let's look at the criminal roster.  The

2     first case on that is Criminal 11-511, U.S.A. against Dong.

3     Mr. Williams, Mr. Klumb, Miss Parham and Mr. Wilcox.  Okay.

4       I'm very familiar with that case.  How long will it take

5     to try it?

6          MR. KLUMB:  I expect, Your Honor, that it would go

7     into a third week.

8          THE COURT:  Three weeks?

9          MR. KLUMB:  Yes.  I'm new to the case; I'll take a

10     hard look at it to see where it can be cut down with fresh

11     eyeballs, but I think it's fairly complicated and will go that

12     long.

13          THE COURT:  Well, what about the defendants?

14          MS. PARHAM:  Well, Your Honor, we would like a

15     continuance, because we just learned this weekend that the

16     evidence that we believe falls under Brady, that we've not

17     gotten from the Government, and we're requesting that

18     evidence, and believe we're entitled to it.

19       I can go into that now, if you want me to wait.

20          THE COURT:  Have you discussed it with the

21     Government?

22          MS. PARHAM:  No, Your Honor.

23          THE COURT:  We're going to hear a number of motions

24     in that case at the conclusion of this bar meeting.  And why

25     don't we just wait and do it then.

1          MS. PARHAM:  Yes, sir.

2          THE COURT:  And in the meantime, you can discuss it

3     with the Government and maybe we can get some accord about it.

4          MS. PARHAM:  Yes, sir.

5          THE COURT:  And I see Dr. Dong is here.  I want you

6     to discuss it with him, and I want to be very sure that he

7     agrees to any continuance that I might consider.  He has

8     expressed openly in court on a number of occasions his desire

9     to exercise his speedy trial rights.

10          MS. PARHAM:  Yes, sir.

11          THE COURT:  And I want to be absolutely sure that he

12     understands what those rights are, and he voluntarily agrees

13     with you that the case should be continued.

14       Now, I don't have a jury coming in until May.  I would

15     assume it would be the first Monday in May, but sometimes they

16     switch it around, but usually it's the first Monday.

17          THE CLERK:  The 7th.

18          THE COURT:  7th of May.  And I don't know if that

19     would give you time or not, or maybe you want to do it before

20     then.  But if we do it before then, it causes some problems

21     because, as you know, when we make up our schedule for term,

22     we circulate that schedule among all the judges, and usually

23     all the months are taken up.  And so if I move into April, I'm

24     stepping on somebody's toes.  I mean, I've got a courtroom,

25     but I may not have a lawyer, I may not have witnesses.  So

1   think about that.  If May is okay, then that works better for

2   us.  But if we try that case, you say -- Let's just say three

3   weeks, to be on the safe side.

4       (Interruption in proceedings while the bar meeting

5   proceeded.)

6           THE COURT:  So it looks like in all probability, the

7   only possible case that would be left is U.S.A. against Dong.

8   We'll decide on that this morning in our motion session, but

9   if that case is not continued, then it would be for trial, and

10  I guess we would start the case after we drew the jury on

11  February the 3rd.  Okay?

12      Okay.  Anybody that needs to leave, can.  We're going to

13  now hear some motions in the Dong case.  I don't know how many

14  we've got, but we've got a bunch of them.

15      (Brief interruption in proceedings.)

16          THE COURT:  We can go ahead and consider the

17  outstanding motions, and then consider Miss Parham's motion to

18  continue, or we can consider the motion to continue first;

19  that's probably the best thing to do.

20          MR. KLUMB:  Yes, Your Honor.  If we're going to

21  address the motion to continue first, do you want counsel to

22  talk with the Government to determine whether --

23          THE COURT:  I think that may be helpful.  That may be

24  helpful.

25          MR. KLUMB:  Very well.

1          THE COURT:  Why don't you take about ten minutes and

2     you can chat about it and let me know when you get ready.

3          MR. KLUMB:  Thank you, Your Honor.

4     (A recess was held at this time.)

5          THE COURT:  Y'all ready to proceed?

6          MS. PARHAM:  Yes, Your Honor.

7          MR. KLUMB:  We are, Your Honor.

8     Essentially, I think this is the status.  Yesterday the

9     defense filed a motion for evidence favorable to the

10    defendant.  The discussion now covered some of the general

11    subject matter areas of evidence that they think they have not

12    been provided and that they want us to look for.  My initial

13    reaction, based on this discussion, is that I'm not willing to

14    concede that this is, in fact, discoverable Brady information.

15    I think some of it may have already been produced.  And

16    given the breadth of discovery, it's understandable why

17    defense counsel may not have located it in the documents that

18    have been provided.  And some of it may very well be Brady,

19    but it's difficult for me to say that without undertaking an

20    investigation.

21    And so for that reason, I'd have no objection on behalf of

22    the Government to a continuance to allow me to explore those

23    things, as long as it's understood that I'm not conceding

24    that, in fact, those items are producible.

25         THE COURT:  Okay.  Mr. Moore has been handling this

1    case since its inception, which is at least two years.  And

2    within the last 30 days, he's seen fit to drop the case in

3    someone else's lap and retire from government service.  The

4    person whose lap he dropped it in isn't here this morning, and

5    so he's dropped it in somebody else's lap.  And I can

6    understand why this U.S. Attorney hasn't had an opportunity to

7    thoroughly review the file and be able to answer your

8    questions.  I can understand that.  And I think he needs

9    additional time to do that.

10        Have you discussed the continuance with your client?

11            MS. PARHAM:  Yes, sir, I have.

12            THE COURT:  And what's his position?

13            MS. PARHAM:  He agrees.  He understands his right to

14    a speedy trial, and he agrees to a continuance until May.

15            THE COURT:  Mr. Dong?

16            MS. PARHAM:  Yes, sir.

17            THE DEFENDANT:  Yes.

18            THE COURT:  You agree with that?

19            THE DEFENDANT:  Yes, I do.

20            THE COURT:  I would like to try this case as much as

21    anybody, I'd like to get rid of it.  But it just seems to me

22    that with the -- I don't want to call it turmoil, but with

23    what's going on in the case, that it would be prudent to

24    continue it.  We've just had a major change in the

25    Government's representation.  That's not the concern of the

1    defendant, and we're not going to continue it because of that.

2    But we've also had changes in the defendant's representation.

3    Maybe not as early or as late as that, but -- by the

4    Government, but still, in a case of this magnitude we've had

5    some big changes in the defense over the last few months, and

6    I think you could use the time as well, not only from the

7    standpoint of preparation, but for pursuing this discovery

8    that seeks to uncover exculpatory information which, of

9    course, is of the most importance to your client.

10        We are now in the middle of January.  It's going to be

11   very difficult for me to get a trial for three weeks between

12   now and May.  And so it would be much more convenient if we

13   could continue it until May.  But if you don't need that much

14   time, and you want to try it sooner than that, you let me know

15   and I can make the arrangements.

16        What do you say?

17            THE DEFENDANT:  Thank you.  Thank you, Your Honor.

18            MS. PARHAM:  We agree with May, Your Honor.

19            THE COURT:  Does the Government agree with that?

20            MR. KLUMB:  Yes, Your Honor.

21            THE COURT:  They say that's May the 7th, and we'll

22   just continue it till then.  I think that for the reasons

23   stated, that the ends of justice are better served by

24   continuing it than trying to push the trial.  I dare say if we

25   tried to try it in February, something's going to come up and

1    somebody's going to be begging me to continue it beyond that

2    term.  Because it is the type case, just the part of it that

3    I'm familiar with, going through these regulations and trying

4    to sort out where we are in the case, is pretty complicated

5    and it takes time.  And you can't just grab it and run like

6    you can your average criminal drug case or something like

7    that.  So we'll continue it until May the 7th or 8th.  May the

8    8th, I think it is, and we'll draw the jury and try it at that

9    time.

10        Now, let's look at the motions that we've got.  And I

11   don't see any reason to put them off.

12             MS. PARHAM:  Your Honor, before we move on, may I put

13   some things on the record regarding this Brady material?

14             THE COURT:  Regarding what?

15             MS. PARHAM:  The Brady material that we're seeking.

16             THE COURT:  Yeah, sure.

17             MS. PARHAM:  Okay.  And, Your Honor, I would move to

18   continue these motions hearings, because I think some of it

19   could impact the hearings.  I'm relatively new to the case,

20   not as new as the Government is, but I became involved, I

21   believe, in September, maybe the late part of September of

22   2013.  There is 85,000 pages of discovery in this case, and

23   lots of regulations, as Your Honor mentions.  And, you know,

24   not a whole lot of case law exactly on point.  And there's

25   some complicated issues.

1      But the Brady material that we're seeking -- and I just --

2  I just want the Court to understand, this federal research

3  grant is based upon a scientific milestone.  When you achieve

4  a certain scientific milestone, then you get grant funds.  And

5  so there are peer review committees of experts, and they're

6  around the United States, that sit here and decide who gets

7  these grants.  And then there are program officers who also

8  have Ph.D.s and scientific degrees, who monitor the grant

9  throughout its inception, over the five-year period.

10     Well, Dr. Dong tells me this weekend, we were -- you know,

11 sometimes a defendant does not know what might really be

12 important to his case -- that the NIH, and that's who the

13 Government alleges he stole money from, the National Institute

14 of Health and the Department of Defense, the Department of

15 Navy and Army, they're alleging that they stole money from

16 them.  The National Institute of Health, the Department of

17 Navy, the Department of Army, have never complained about any

18 of these grants.  They've never said that they were misspent.

19 They're not the ones that started this investigation.

20     And so they have internal notes, they have program officer

21 notes, they have review committee notes, they have peer review

22 notes, all throughout this grant, where they've given a thumbs

23 up all through the grant.  We don't have those things.

24          THE COURT:  Why didn't you ask for them?

25          MS. PARHAM:  I'm asking for them now.

1          THE COURT:  No, you're not, you're trying to ask for

2     everything but the kitchen sink in your motion.  Nobody can

3     tell what you're after in that motion.  You've got about a

4     hundred items in there.

5          MS. PARHAM:  They're the last 17, Your Honor.  But in

6     our motion we asked for the expert committee opinions --

7          THE COURT:  There's no use for you to argue your

8     motion this morning.  They haven't responded to it, and I

9     don't want to hear one argument until we can hear both of

10    them.

11         MS. PARHAM:  I just want to put on the record what

12    we're asking for, so that they'll know.

13       The other thing is --

14         THE COURT:  You're going to have to ask for it in

15    writing.

16         MS. PARHAM:  It's in this motion.

17         THE COURT:  Okay.  If it's in the motion, you don't

18    need to put it in the record, just file the motion.

19         MS. PARHAM:  All right.  Well, I just didn't want

20    there to be any confusion about what we're asking for in our

21    motion.

22         THE COURT:  Well, I looked at it, and of course I'm

23    not as familiar with the case as the lawyers are, but I was

24    confused.

25         MS. PARHAM:  Well, for example, I brought up with the

1    Government, during our break, I didn't know until Sunday that

2    the National Institute of Health has been using Dr. Dong as an

3    expert for all of their grants up until two weeks ago.  I had

4    no idea about that until Sunday.

5         And the Government says, well, we don't agree that that's

6    exculpatory, because one hand of the Government doesn't know

7    what the other hand of the Government is doing.  And I think

8    it's clearly exculpatory that the National Institute of Health

9    is using him for an expert on all their grants.  And they're

10   the ones that he allegedly stole money from.  I think that's

11   clearly exculpatory.  So that's the kind of stuff I'm talking

12   about.  And so there's a general disagreement, and whether

13   it's exculpatory or not.

14             THE COURT:  I've got your motion.  Now, which item is

15   it in that motion that asked for what you just explained?

16             MS. PARHAM:  On page four and five, paragraphs 15 and

17   16.  Paragraph 15 reads, "Any and all requests for Dr. Dong,

18   Vaxima, GenPhar or Danher Wang to serve as a reviewer for any

19   NIH, Department of Defense or Department of Navy study, grant

20   or collaborative agreement prior to the federal investigation

21   of this case."  The next paragraph, paragraph 16, is

22   identical, but it says since the federal investigation of this

23   case.

24        And with regard to paragraph 17 and 18 of that motion,

25   Your Honor, the Navy and Army and National Institute of Health

1    have issued scientific publications with Dr. Dong, citing all

2    of his research approvingly.  I didn't know that.  And, you

3    know, I believe that all of those publications that they have

4    published throughout the United States, citing his science,

5    that that's exculpatory.

6         MR. KLUMB:  And again, Your Honor, my gut reaction to

7    that request was that the fact that he's scientifically

8    competent and has published, and that those might be very

9    valuable findings that are relied on by the expert community

10   in general and the Government in particular, that fact doesn't

11   mean that he didn't improperly steal money and apply it to --

12   grant money, and apply it to a building when he wasn't

13   supposed to.  That's just a completely different issue that

14   it's, therefore, not exculpatory.

15        THE COURT:  Well, it seems to me that the information

16   she's asking for, that she has a right to get it.  Now, the

17   fact that she gets it doesn't make it exculpatory, doesn't

18   make it relevant.  I mean, if the lawyers had to decide those

19   admissibility requirements on every motion for Brady material,

20   then there never would be any production, because you wouldn't

21   be agreeing on it.  And so the fact that we do it doesn't make

22   it exculpatory.  I have serious questions about it, similar to

23   the ones that you expressed, but I haven't had an opportunity

24   to think about it a long time, and I haven't had an

25   opportunity to put it in context.

1    And possibly when we get to trial, if we ever get there,

2    and I see that evidence, then it will be in context, and I

3    could determine whether or not it is indeed relevant.

4        It may -- all forms of character evidence are very

5    difficult to determine whether they're admissible or not.

6    Character evidence is hard to put a handle on.  And the

7    Federal Rules of Evidence limit what you can do by way of

8    character evidence severely.  And the reason they do that,

9    according to the comments by the committee, is because it is

10   so prejudicial, and it can be misleading to a jury.  So the

11   fact that a witness is an Eagle Scout, the fact that he's been

12   cited for other honors, doesn't necessarily make it

13   admissible.  Most lawyers don't object to it, because they

14   don't understand what character evidence is all about.  But

15   this may fall within that category, and may be a no-no under

16   Federal Rules of Evidence.  But we'll have to look at it and

17   see.

18       So what I suggest is this.  You and Mr. Williams look at

19   this list, and don't be blinded by the fact that she's asking

20   for exculpatory evidence.  Just let's look at it as she's

21   asking for certain information; whether it's exculpatory or

22   not doesn't seem to me necessarily carries the day.

23   Everything that's discoverable isn't exculpatory.  But she

24   thinks she's entitled to this, and I'm inclined to think she

25   is as well.

 1    So let's look at it, you and Mr. Williams, discuss it with

 2    Miss Parham and Mr. Wilcox or whoever is in on it, and decide

 3    which of these items you will produce and which ones you won't

 4    produce.  And then we'll just schedule a hearing and hear the

 5    matter and hear your side and the defendant's side and make a

 6    decision as to what is to be produced.

 7         MR. KLUMB:  Understood.

 8         THE COURT:  Now, as far as the motions we've got

 9    today are concerned, I don't have any objection to carrying

10    them over.  The motion to suppress, I understand, has been

11    withdrawn.  I guess it's been withdrawn because we've already

12    ruled on it in the other case.

13    Do you want to dispose of any of these motions?

14         MR. KLUMB:  The Government's prepared to address any

15    and all of them, Your Honor.

16         THE COURT:  What about it, Miss Parham?

17         MS. PARHAM:  Well, I think with regard to the bill of

18    particulars, we would like to argue that motion, you know,

19    more than 30 days before trial.  I mean, we can --

20         THE COURT:  I'll hear it right now, if you want to.

21         MS. PARHAM:  Okay.  That's fine, Your Honor.

22         THE COURT:  What's fine?

23         MS. PARHAM:  I would like to continue the motion to

24    dismiss the counts of the indictment, because I believe

25    there's some other information out there that might help our

1  argument on those.

2      But with regard to the bill of particulars, Your Honor,

3  I'd like to go forward on that one.

4          THE COURT:  Say what?

5          MS. PARHAM:  I'd like to go forward on the motion for

6  bill of particulars.

7          THE COURT:  Okay.  You've got a motion for bill of

8  particulars as to counts ten through 12.

9          MS. PARHAM:  Yes, sir.

10         THE COURT:  Okay.

11     (Brief interruption in proceedings.)

12         THE COURT:  All right, go ahead.

13         MS. PARHAM:  Your Honor, with regard to this bill of

14  particulars, we would ask that the Government be required to

15  provide the specific names of all the federal programs and

16  agencies overseeing those federal programs that they're

17  referring to in counts ten, 11 and 12.

18     We would also ask that the Government be required to

19  specify the benefits that GenPhar received under the federal

20  programs alleged in counts ten, 11 and 12, and the specific

21  property that was converted and worth at least $5000 which was

22  owned by and under the care, custody and control of GenPhar.

23  None of that information is in the indictment.  And we believe

24  it's necessary to charge the offense.  And to put us on notice

25  with what Dr. Dong is charged with.

1    I mean, we have the case law that talks about federal

2    programs, and that's why we filed the motion to dismiss, but

3    we would like the Government to specify what they're talking

4    about, so that we can properly defend against it.

5            THE COURT:  All right, sir.

6            MR. KLUMB:  Thank you, Your Honor.  For starters, I'm

7    not aware of any requirement that the federal program have a

8    name that can be applied to it, and that that's an essential

9    element of either pleading or something that we have to

10   disclose by way of a bill of particulars.

11       In our response to this particular motion, 355, the

12   Government pointed out all of the enabling legislation which

13   authorizes the National Institute of Health, the Army and the

14   Navy, to make funds available for scientific research through

15   grants and other means like the programs that are involved

16   here.

17       So I don't think we have to call it Medicare or the War on

18   Poverty or Head Start or give it any particular label.  It's

19   the enabling legislation, all of which is cited in the

20   Government's response at pages two and three, that allows for

21   that.

22       In terms of the specific benefits that GenPhar has

23   received, on the motion to dismiss, the back and forth

24   indicates that it's very clear that the parties understand

25   what these benefits are.  They are the grant payments.  The

1    defendant, the Court might recall, moved to dismiss these

2    counts on the grounds that the benefits were more akin to a

3    strictly pure commercial transaction in which monies were

4    being paid to the Government -- and I'm sorry, to the

5    defendant.  And that accordingly, they couldn't be considered

6    to be benefits.

7         But in terms of what we're talking about for the bill of

8    particulars, the benefits are the grant awards that were drawn

9    down by the defense.

10        And so I think that's clear.  I don't know what else it

11   could possibly be.

12        If Your Honor wants, I'll address the motion to dismiss

13   and why I think these do constitute benefits in this case.

14   But in terms of the bill of particulars, that's what they are,

15   plain and simple.

16             THE COURT:  Go ahead.

17             MR. KLUMB:  And again, as for the specific property

18   that was converted, those counts reincorporate all of the

19   previous paragraphs in the indictment, and they are replete

20   with references to which parts of the grant awards were

21   improperly applied by the defendant, say, to his building or

22   to lobbying costs, or for impermissible travel.

23        So again, the benefits that were converted improperly are

24   identified throughout the indictment.

25        That said, I probably don't have to spend a lot of time on

1    the defendant's burden in obtaining a bill of particulars.

2    It's a significant one, and they are rarely granted because

3    of, A, the extensive description in the indictment that lays

4    all this out, and, of course, all of the discovery that has

5    been provided as well pursuant to basically an open -- the

6    Government's open discovery policy.

7        But again, I don't -- I think the defendant is in a

8    perfectly sound position to defend the charges based upon the

9    description of them in the indictment, not to mention also the

10   brief that we filed on the applicability of Government

11   regulations contains an extensive narrative of the case that

12   makes these things very clear, I submit.

13       Thank you.

14       THE COURT:  When you say open file policy, what do

15   you mean?

16       MR. KLUMB:  It's not an open file policy in the sense

17   that we open all of our files, including the privileged work

18   product that I have in my file, et cetera.  It is an open

19   discovery policy, in that we've collected -- all of the

20   documents that we've collected, we have made available to the

21   defense, in addition to all reports of interview and those

22   sorts of things.

23       THE COURT:  Everything that's not covered by work

24   product and --

25       MR. KLUMB:  Or other applicable privilege, yes, sir.

1              THE COURT:  Everything but that is produced?

2              MR. KLUMB:  Yes, sir.  But, for example, the items

3     that were described this morning that are the subject of the

4     motion, for example, any publication that Dr. Dong may have

5     made, or some sort of results that were cited by the

6     Government in other publications, we didn't undertake to

7     search for those, of course, because they're not part of the

8     grant files, for example, or evidence obtained in search

9     warrants or by process through the grand jury, for example.

10    It doesn't include stuff like that.

11        (Brief interruption in proceedings.)

12             THE COURT:  Go ahead.

13             MS. PARHAM:  Thank you, Your Honor.

14        With regard to -- The reason we're asking for which

15    property was converted, that's what's required.  They're

16    required to show which property was converted to the

17    defendant's personal use, this over $5000.  The reason we're

18    asking for that, Your Honor, is because these grants

19    transpired over years, and the grant money was around

20    $11 million, and GenPhar had private investments of around

21    $13 million.  And all of that is commingled in the bank

22    account.  So you have private investor money of 13 million,

23    grant money of 11 million.  And so we want to know what the

24    Government contends he converted to his own use.  And I know,

25    I read the indictment, and I know what they allege in count

1    one.  But that's not specifically alleging anything.  We want

2    to know what they say were the benefits under the federal

3    program, and which of those were wrongfully converted.  And we

4    likened this to the case United States versus Bortnovsky,

5    where the convictions were reversed because they were not

6    required to make the bill of particulars identifying the

7    claims which were fraudulent and which invoices were

8    falsified.

9        We believe we're entitled to the specific benefits that

10    they allege and the specific property that was converted to

11    the defendant's use that was over $5000.  Because all we know

12    is that we have $11 million are grant funds, $13 million

13    investor funds, and they're all in the same bank account, and

14    we don't know how the -- we don't even know what the

15    Government's alleging we converted.

16        MR. KLUMB:  Your Honor, first of all, I'm not

17    familiar with the case.  I don't know that it's cited -- I'm

18    sorry, it is cited in the defendant's motion.  But let me just

19    say this.  The benefits that are the predicate for federal

20    jurisdiction need not be the property that was converted.  So

21    if you have a Head Start agency that gets more than 10,000 in

22    a year of federal funds, but a -- say the head of the Head

23    Start agency embezzles monies that comes from a different

24    source, that's sufficient under the statute.

25        There doesn't have to be a tracing of the federal money

1   through to the improper conversion.  It is the provision of

2   the more than 10,000 in a year which provides federal

3   jurisdiction, not that it has to be related to what's taken.

4           THE COURT:  Okay.  I think I understand your

5   arguments.  I didn't ask Miss Parham about the open file

6   policy, but that's the discovery policy and it's been in

7   existence in this district for some time, and I assume it was

8   applied in this case.

9           MS. PARHAM:  I don't believe it is being applied in

10   this case, and I'll tell you why.  It's because they've got

11   85,000 pages worth of documents that are unorganized.  We've

12   been going through it in discovery and trying to organize it.

13   I'll just give you an example.  Danher Wang, his wife, says

14   that she has some spread sheets that are attached to her

15   debriefing; they're not.  There could be another spread sheet

16   in the other 85,000, and I'll get with them on that, I mean, I

17   can handle -- we can talk about all those things.

18       But the most important thing is, is that they're alleging

19   that my client stole and misappropriated grant money from the

20   National Institute of Health, the Department of Defense, Army

21   and Navy.  And we believe that the Government does not mean

22   the U.S. Attorney's office in Charleston, it means every

23   federal agency.  And he is charged with knowing what is in

24   their files and producing it.  And so open file policy, if

25   it's a true open file policy, we should have an open file of

1    everything related to Dr. Dong and the National Institute of

2    Health, everything related to Dr. Dong in the Department of

3    Navy, Defense and Army.  That's a true open file policy,

4    because that's really the stuff that gets at the heart of

5    this.

6        Because the bottom line is, they gave him the thumbs up

7    the whole way through these grants, never complained about

8    them, never filed anything.

9        And, you know, he talks about the regulations, Your Honor,

10   there are actually regulations that I've recently found that

11   talk about an administrative procedure.  When you're in

12   violation of some grant, you're supposed to be called out on

13   it, and you have an administrative process and all that.  You

14   know, if that wasn't done in this case, is that evidence

15   favorable to a defendant?  Absolutely it is.  And so we

16   believe a true open file policy not only opens the file of the

17   U.S. Attorney's office in Charleston, but it opens the file of

18   the National Institute of Health, the Department of Defense,

19   the Department of Navy and the Department of Army.

20       And just while I'm on that, if you start looking for

21   research grants on Westlaw, I mean, any way you want to search

22   it, it's very difficult.  I have found three in the whole

23   United States over all time, criminal charges involving any

24   kind of research grant.  And they're not even on point.  And

25   the reason is, you can find an abundance of civil cases,

1    because they're all sued on civil and stuff like that.

2        But anyway, those Government files, if it's a true open

3    file -- And that's what we asked for, we asked for all of that

4    information, all of their information pertaining to these

5    grants.  Because if I'm right, and they gave him the thumbs up

6    the whole way through, then you're entitled to know that.  And

7    we're entitled to the documents that show that.

8            THE COURT:  Okay.  I don't think, when you talk about

9    open file policy, that we're talking about the same policy

10   that you're talking about.  I don't think when the Fourth

11   Circuit talks about open file policy they are expanding it to

12   what you take it to.  I think an open file policy means that

13   evidence that the Government has in its file, which is

14   pertinent to the case and which it plans to use at a trial to

15   show the defendant is guilty.

16       Now, if you want to ask for something else, you can ask

17   for it.  But I don't think they voluntarily have to pursue it

18   to the extent that you say they should.

19       Now, I was reading a case recently on bill of particulars,

20   it's a Fourth Circuit case, Criminal 12-4630.  And there are a

21   number of defendants, the first defendant is United States of

22   America against Suado, S-U-A-D-O, Mohamed Ali, also known as

23   Suada Mohamed Ali.  And it deals with bills of particular.

24   And there's a particular quote here that I think is pertinent

25   to what we're considering today, and it says what should be

1    produced, whether the indictment should contain, and when an

2    indictment does not contain it, it should be subject to a bill

3    of particular motion.  An indictment is sufficient if -- and I

4    quote -- "...first, contains the elements of the offense

5    charged and fairly informs a defendant of the charge against

6    which he must defend, and, second, enables him to plead an

7    acquittal or conviction in bar of all future prosecutions for

8    the same offense."  End of quote.  And I think the indictment

9    in this case provides that information.

10        In addition, as the Fourth Circuit has stated, discovery

11    in the case can be used to furnish the information that a bill

12    of particulars may present.  And where you have an open file

13    policy, that can be considered to cure an indictment that

14    otherwise may not be sufficiently detailed so as to adequately

15    inform the defendant of the charges against him in order that

16    he may prepare a defense.

17        So with the indictment here and with the open file policy,

18    I think clearly the indictment is sufficient, and the motion

19    for a bill of particulars as to counts ten, 11 and 12, is

20    hereby denied.

21        Now, we have another motion for a bill of particulars?

22            MR. KLUMB:  361, yes, Your Honor.

23            THE COURT:  All right, Miss Parham.

24            MS. PARHAM:  Once again, Your Honor, the indictment

25    throughout the overt acts talk about the funds and the dollar

1    amounts that were misappropriated, but nowhere in the

2    indictment does it talk about what my client allegedly did,

3    the -- and which -- how it was actually misappropriated.

4    Again, all these monies are going into a joint account with

5    his business, GenPhar's operating account.  And so the

6    Government also has failed to allege what the scheme to

7    defraud is.  I mean, just because it's long, doesn't mean it

8    sufficiently puts him on notice of what he's charged with.  I

9    mean, they have plenty of overt acts that just have these

10   dollar amounts, but they have not sufficiently outlined the

11   scheme to defraud, for him to know what he's accused of doing

12   in this case.

13       And with regard to the counts two through nine, Your

14   Honor, the United States' money, they haven't outlined in the

15   indictment what the United States' money is.

16       And we believe we're entitled to have them pin down what

17   they're talking about in all of these counts, so that they

18   can't change it up at trial.  We believe that they should have

19   to plead the United States' money, the federal programs,

20   everything that they're talking about, and not just have this

21   broad generalized charge, so that we know how to properly

22   defend, and then they can't change their theory in the middle

23   of trial.

24       I mean, they're the Government, and if they're charging

25   this case and they know what this case is about, why wouldn't

1    they give that to us?  Why wouldn't they want to put us on

2    specific notice of what he's charged with doing?  Instead,

3    they have these broad generalizations that don't tell us what

4    the United States' money is, that don't tell us what the

5    federal program is.  And, you know, Your Honor says that

6    that's sufficient to put us on notice, but I don't believe it

7    is.  And I believe they should have to pin themselves down so

8    that they can't change tactics during the middle of trial.

9    This is a complicated case, Your Honor, and, you know,

10   basically the substantive counts just allege -- reallege the

11   indictment in count one, but this is a complicated case with a

12   lot of money and a lot of dollar amounts, and even though it's

13   a long indictment, it's not a very specific indictment.

14          THE COURT:  Anything further?

15          MS. PARHAM:  Well, Your Honor, I just wanted to put

16   on the record, because we kind of switched up.  But with

17   regard to your statement about the open file policy, I do

18   believe, under Brady and all the Supreme Court cases, that the

19   Government is charged with knowing what is in other government

20   files.  And they're charged with knowing what's in those files

21   and knowing whether it's favorable to a defendant.  The test

22   is not whether it's --

23          THE COURT:  We're not talking about Brady now, we're

24   talking about a bill of particulars.

25          MS. PARHAM:  Well, you said anything else.  I just

1  wanted to put something on the record before we left for the

2  day.  I mean, that's what we were talking about with regard to

3  the other motion, and I just wanted to make sure I put

4  something on the record with that.  But I'll come back to

5  that.

6        THE COURT:  Yes, sir?

7        MR. KLUMB:  The law is clear, Your Honor, the purpose

8  of a bill of particulars is not to pin down the Government or

9  provide its evidentiary detail or its theory of the case.

10  Despite the fact that I think, besides the indictment, we

11  provided an understandable, clear narrative in the -- our

12  brief on the applicability of the regulations, that's not

13  required.  The fact is, is that I listened to what Miss Parham

14  said, and what she wants in this second bill of particulars,

15  but if the Court will look at it, it's page after page of

16  detailed written interrogatories.  The Court's ruling on the

17  prior motion with respect to 355 is even more applicable here.

18     Thank you.

19        THE COURT:  You know, I don't make the law, and I

20  don't say what you have to put in the indictment, but the

21  Fourth Circuit and the Supreme Court do.  And it's very clear

22  they do not have to allege the particular act that the

23  defendant asserts in this case.

24     The case that I cited earlier, the Fourth Circuit case,

25  says for an indictment to be sufficient and withstand a motion

1    for a bill of particulars, it must, and I quote, "...first,

2    contains the elements of the offense charged and fairly

3    informs a defendant of the charges against which he must

4    defend, and, second, enables him to plead an acquittal or

5    conviction in bar of all future prosecutions for the same

6    offense." End of quote. The indictment in this case does

7    that.

8        In addition, the Government has an open file policy where

9    it has opened its file and given to the defendant everything

10   that's in its file, except previous matters and attorney work

11   product. The defendant doesn't deny that, the plaintiff

12   asserts that.

13       And so those two, coupled with the language of the

14   indictment and the discovery process, I think, cause the Court

15   to deny the motion for bill of particulars in this case, and

16   it is so ordered.

17       Okay. That's all we have for today?

18       MR. KLUMB: Just one housekeeping matter, if I might,

19   Your Honor. One of the motions that was on the schedule for

20   today was the Government's 372, it's a motion in limine

21   regarding the admissibility of testimony about the

22   requirements of the awards, which come from different sources,

23   regulations, documents, reports, that sort of thing. I didn't

24   notice this until late yesterday. I don't think we have a

25   response from the defense to 372. Since we're putting

1    everything off, I have no objection to them filing a late one,

2    but as it stands right now, it's unopposed.

3         THE COURT:  I'm not sure exactly what you're talking

4    about in your motion.  You say, page two, the Government will

5    seek to introduce evidence of award process and requirement

6    through the testimony of agency witnesses, agency documents

7    and court's judicial notice of applicable regulation.  I don't

8    know what that means; and, therefore, I can't tell you whether

9    that's something that can be introduced into evidence or not.

10        MR. KLUMB:  Very well, Your Honor.  Again, I was more

11   interested in just highlighting that it's -- than unopposed,

12   if it's -- This is very related to the motion in limine

13   regarding the applicability of regulations.  In fact, it's

14   virtually indistinguishable.

15        THE COURT:  Let's deal with that one, because that's

16   something that you're going to have to prepare for.  I am not

17   going to give the jury a stack of regulations to read and

18   interpret.  That's not my job, and that's not the way you try

19   cases.

20     Now, I think it might be helpful if we set up some

21   procedure whereby the Government makes known the regulations

22   it wants the Court to interpret to the jury, and do that

23   sufficiently in advance of the trial so that the defendants

24   can review it and make any objections to it, or add any

25   regulations that they think are applicable.

1    So let's say we're going -- we're continuing this case

2    until May.  Let's say that by March the 15th, the Government

3    makes those documents available.  And then we'll give the

4    defendants 15 days, until April the 1st, to respond.  And that

5    way we can clearly hear, we can get the documents in front of

6    us, we can see what they say, we can talk about them, and then

7    I can get some idea in my mind of how I'm going to take this

8    information and charge it to the jury.

9    Okay?  That suit everybody?

10   There used to be a rule, and I've never had it come up in

11   my law practice or as a judge, but there was a rule that I

12   learned about when I was in law school, and it said that if

13   you want to rely on law from a foreign jurisdiction, you have

14   to plead it and you have to prove it.  I don't know if that's

15   still the law, and I've never had it come up, never had to

16   look it up in my practice.  But it seems to me that this might

17   fall within that category.  We're not just pulling down a book

18   that's published by West Publishing Company.  We're using

19   regulations that are, gosh, just numerous regulations.  And so

20   I think that the Government ought to be required to not only

21   assert its position, as you normally do, and have the Court

22   determine the law, but to actually put forth these regulations

23   and tell the defendant which ones you're relying on, and tell

24   the Court, and give the defendant an opportunity to talk about

25   it.  And add to it if they choose, or object if they choose.

1    Okay. So that's how -- March 15th and April 1st deadline.

2    Everybody understand that? All right.

3         MR. KLUMB: The Ides of March and April Fools?

4         THE COURT: That's fine. Anything else today? And I

5    may change my mind about giving the regulations to the jury,

6    but that's just so foreign to anything I've ever done, I can't

7    imagine I'd do that. That would just create a circus in this

8    courtroom if I let the jury take a stack of regulations and

9    tell them, you go out there and decide what the law is. I

10   don't think the Fourth Circuit would like that too much.

11        MR. KLUMB: I don't think the Government would ask

12   you to do that, Your Honor. So we'll try to keep our proposed

13   instructions tight and relevant and hopefully of a size that

14   the jury can comprehend it, even if Your Honor chooses to give

15   those particular regs.

16        THE COURT: I can't imagine I'd do it. But I do

17   think that in all probability, they ought to be made a part of

18   the record. But things can be made a part of the record and

19   not go to the jury. And that's the category which I would

20   find these regulations. Just so we can see what the record

21   is, but not necessarily give it to the jury. We don't do that

22   often, but we do it in some occasions.

23       Anything further?

24        MS. PARHAM: Yes, I'd like -- the one thing I wanted

25   to put on the record.

1          THE COURT:  Sure.

2          MS. PARHAM:  We're asking, pursuant to Brady and all

3    of the Brady cases, the United States Supreme Court cases, as

4    well as the discovery abuse case that recently came out from

5    the Fourth Circuit, I believe the name is Bartko, B-A-R-T-K-O,

6    under those cases we're asking that the Government produce any

7    evidence that is arguably favorable to the defendant, that not

8    only is in their file, but is in the file of a government

9    agency, the Department of Defense, the Department of Navy, the

10   Department of Army and the National Institutes of Health.

11   We're asking that they produce any evidence that is arguably

12   favorable.

13         THE COURT:  If you want to ask for that, then you

14   make a motion that does that.

15         MS. PARHAM:  Yes, sir, I will, but I'm moving -- I

16   want to make sure it's on the record.

17         THE COURT:  No, you don't make a motion like that.

18   You put it in writing.  That way, there's no question about

19   what it is.  And if you've already made that motion, it's in

20   the record and they will respond to it.  If you haven't made

21   it, make it.  But you don't make any motions in this court

22   orally.

23         MS. PARHAM:  I believe we've already made it, I just

24   wanted to make --

25         THE COURT:  If you have, fine.

1           MS. PARHAM:  -- clear.

2           THE COURT:  If you haven't, you can file another one.

3           MS. PARHAM:  All right.

4           THE COURT:  Because we're not going to have any

5    argument as to what was said and what was not said.  And we're

6    not going to go back to the record and comb it to see if you

7    did, indeed, say something that you say you said.  File a

8    motion, they'll respond to it and we'll deal with it.  Okay?

9           MS. PARHAM:  Thank you, Your Honor.

10           THE COURT:  Anything else?

11           MR. KLUMB:  No, thank you, Your Honor.

12           MR. WILCOX:  Nothing, Your Honor.

13           THE COURT:  Gosh, I thought you were going to say

14    something.

15       Thank you very much for coming.

16

17       (Court adjourned at 12:24 p.m.)

18

19

20

21

22

23

24

25

1                    REPORTER'S CERTIFICATION

2

3            I, Debra L. Potocki, RMR, RDR, CRR, Official Court

4    Reporter for the United States District Court for the District

5    of South Carolina, hereby certify that the foregoing is a true

6    and correct transcript of the stenographically recorded above

7    proceedings.

8

9

10

     S/Debra L. Potocki
11   _____

12   Debra L. Potocki, RMR, RDR, CRR

13

14

15

16

17

18

19

20

21

22

23

24

25